The case of Jerry's Famous Deli v. Papanicolaou is here for argument. Welcome back, I should say. We're quite familiar with the case, not as familiar as you, admittedly. I know this has been a long piece of litigation, but we are quite well versed in the briefs, and so please proceed to argument, but I think you should focus on what you think is the case. Each of you has your best legal points. Please proceed. Good afternoon. May it please the Court. I'm Dan McCarthy, and I'm appearing for Appellant Constantino Papanicolaou, both individually and doing business as Roxy's Famous Deli. This appeal, as you know, concerns an award of disgorged profits of about $105,000. In this appeal, we elected not to pursue certain issues and focused on only four issues, and the basic point is that three adjustments made by the auditor and adopted by the district court were incorrectly adopted because of unprincipled excuses and because of contrary evidence that was ignored, which was undisputed evidence. On the fourth issue, which is the tax issue, our assertion is that the adjustment for taxes was not properly made by the auditor, and that had the effect of artificially inflating the profits that the court awarded as disgorged profits. The – in hindsight, it's clear, I think, that part of the reason that the problems developed was the methodology that was used. The auditor would issue reports. There was no briefing schedule set up to deal with them. We would file briefs. The court would give the auditor another chance to address the mistakes. We would address those – the new report. The court gives the auditor a third chance. And what happened during the process was that the auditor never contacted me or my client to try to actually get to the bottom of these adjustments that he was planning on making and get to the bottom of his perception that there were missing documents. Alito, you're – as I understand it, you're challenging all of these as sort of accounting mistakes or auditing mistakes on the merits. You're not – you're not alleging that you've been deprived due process because the district court didn't conduct certain kinds of hearings. That's correct. I'm just suggesting from a practical point of view, that's why we got to the place we're at right now. There is, I recognize, no requirement for there to be oral argument in a contempt hearing, but the fact that there wasn't resulted in questions being raised by the auditor, we never got a chance to answer them. Didn't you have an opportunity – I mean, are you – didn't you go back and weren't you in a position when you went back after the first decision here to make the very arguments that you're making now? And the problem was we made the arguments and then the auditor kept changing ground on us. He would answer our issues that we raised with adopting new methodologies. For example, in 1997, he changed over to using industry standards, as opposed to what he had originally done. He changed by now taking a, quote, sampling of 181 of approximately 4,000 miscellaneous expenses. Were you in a position to make that argument to the district court? Right. And then when we made the argument, the auditor comes back with another report trying to answer 17 questions posed by the district court, raising new points that the auditor hadn't made before. So then we reply to that, and without a hearing, the district court issues its order now raising new issues that had not been presented before that we tried to address through the motion for reconsideration, and then we were blamed for not having addressed these issues before that had never been raised with us, either by the court or by the auditor. The – But when I, you know, I hear that, that seems to me to be more of a due process cast to it than I perhaps perceived from your brief, because in reading the briefs I was thinking more that there were these various categories, and that as a matter of accounting and business judgment, you felt that the court was simply wrong in accepting. So did I misperceive the challenge? I made a due process argument in this appeal. I'm just trying to, from – sort of give the Court a perspective on how we got here. I'm not saying that we were denied due process. It's the process that was used that led to a faulty conclusion, which is why the errors need to be remedied. And the faulty conclusions had to do with accounting errors, as you suggested. Now, on the tax issue, it really is primarily a legal issue. There's approximately $56,000 in taxes that were not accounted for. It's important to realize that those break down into two categories. One is Federal and State income taxes of approximately $35,419, and the rest are self-employment taxes paid for Social Security and Medicare. And that component is $22,433. The auditor reached a legal conclusion on his own that those should not be accounted for. The district court never reached that. It was him reaching his own legal conclusion, which we believe he was in no place to reach. But the district court adopted that, did it not? Well, the district court actually didn't adopt his legal conclusion. It excused his error in failing to account for taxes by saying it can be deducted later on once the judgment is paid against future income. So the district court actually went at it a backwards way and never addressed the legal issue on whether taxes should be accounted for in determining disgorged profits for a trademark violation. Now, we've cited the law that supports the conclusion that Federal income taxes should be taken into account. That's the Wolf v. Revlon decision from the Second Circuit. And jury points out that the Bassett v. Revlon decision from the Second Circuit. But jury points out that in Wolf v. National Lead, which is a decision from this Court, the suggestion is made that income taxes should not be accounted for where you have a willful and deliberate infringer. We think that that argument is easily answered. That case was disapproved on other grounds. It hasn't been cited for that proposition. The district court didn't adopt that legal conclusion. And the distinction drawn by the Wolf Court is an unprincipled distinction. The whole point is arriving at determination of the profits to disgorge. It's an accounting calculation. Why should the accounting calculation be performed differently if you have a willful and deliberate infringer? I don't think it's the Larson v. Brinkley case, the Supreme Court's decision that you that, as I understand it, that we're going to award, excuse me, where an infringer is a willful infringer, then taxes are not deductible. I recognize that, Your Honor. My argument is that it's an unprincipled distinction, and it doesn't allow for the mitigating circumstances that can apply even when you have a willful and deliberate infringer. So you're saying that the Supreme Court made an unprincipled decision? Well, no, I'm not saying that. I'm saying that there is a safety valve that was recognized in the Wolf v. National Lead case, and I think by the Supreme Court as well, which is you can have a willful and deliberate infringer, but if there are mitigating circumstances, you shouldn't impose that penalty upon the infringer. It's a matter of discretion. I mean, a judge looks at it in the district court and says, well, you know, on balance, my discretion is da, da, da. By the way, let me ask you a practical question. What I think is a practical question, and it may not be at all, but if, in fact, you're not allowed to deduct these, deduct it from the award, isn't there a remedy for the taxpayer? Can't he file an amended return and doesn't he have the – if, in fact, he's being charged with these taxes as profits or not – or disallowed as taxes? They're disallowed as taxes. Are you saying he has no remedy with respect to his taxes? Well, the remedy is one that the auditor implied by saying there can be a tax benefit of paying the disgorged profits. And the district court actually said more clearly that it felt, in its last order on this, that he could deduct any payment made. As we pointed out, though, and this is really the excuse behind the mistake. The excuse is, well, it doesn't matter that there was a failure to account for taxes because he can recoup it in another way in later years. But let's stop there, because why is it a mistake that Wolf case cites back to the circumstances? So as a matter of law, the auditor wasn't actually incorrect, was he? Well, I would respectfully suggest it's not the auditor's place to play a judge and say a few things to the law. But the auditor, having made that judgment, I mean, having made that judgment in the district court, having adopted it, that principle is not incorrect, that taxes ordinarily should not be deducted in this circumstance. Do you agree with that statement? I don't, because the district court actually didn't adopt that. No, I didn't ask you if you disagree with it. I asked you if you agree with the statement that generally income taxes paid in this situation where there's this willful violation are not generally accounted for in the absence of mitigating circumstances. Are we all on board with that principle? I think that's what Wolf said, Your Honor.  And so that, we have to follow that. And my argument on that is the district court actually never got to that point. We don't know if there were mitigating circumstances. It never actually made a legal analysis. Instead, it jumped to the excuse that the auditor had made for his own mistake in failing to account for taxes. And I would suggest that if you look back at your own opinion from September 2004 in this case, you'll see that there were mitigating circumstances. We had, Your Honors affirmed, a violation of the injunction and the finding of contempt. But the contempt was based on determinations of the menu and the logo creating customer confusion, which is the problem was vagueness, and I understood that the contempt was affirmed, but still it was vague to begin with. My client in a number of respects was not found to have acted in contempt of the injunction. He had done many things to try to comply with it, and he ended up getting caught and violating an injunction that was void. I understand that it's been affirmed, but there were mitigating circumstances, and if you look at the prior opinion, it reflects that by looking at the kind of injunction that had been violated. We're looking at words like predominant use of colors in posters. What's predominant? Catch words like customer confusion. Well, one person's perception of that may be different. Now, again, counsel, I don't want to argue, I don't want to re-argue the argument that we had two years ago in this, but I have to say as I looked over our opinion and recalled the exhibits in that case, I mean, your client really wasn't, he wasn't really just, he wasn't skirting the line. He was well over the line. I mean, this was pretty obvious that he was imitating Jerry's Famous Deli in every way he could. You know, the district court actually didn't agree with that in a number of respects where Jerry's had complained that my client had violated the injunction, and we pointed out in the reply brief that Jerry's overstated that in its opening brief in a number of ways my client was found not to have done anything wrong. And where he was found to have done something wrong, there's no doubt the court found that he intentionally violated the injunction. All I'm saying is there were mitigating circumstances, and we never even got a chance to address that with the district court. The district court never even looked at mitigating circumstances or the issue of the law. It simply sidestepped the whole thing and said, well, we have an excuse, which is the deduction on future returns. The problem with that assumption, as pointed out by our forensic accountant, Christopher Money, was that there's not a dollar-for-dollar deduction if you end up paying disgorged profits. And so the factual statement, and actually it's a legal conclusion by the district court in that regard, is simply wrong. There's not a dollar-for-dollar deduction, and it's speculative on top of that because it assumes without any evidence that my client will have future income to deduct the payment of the disgorged profits against, which, again, simply exposes the fact that it's a backwards way of analyzing the issue. And what's backwards about it is we're supposed to determine, according to the Court's original order, whether there was profit to disgorge, and instead of determining whether there was profit, the Court says, well, I'll excuse the mistake because he can get a deduction down the road. It's a backwards analysis, even under, you know, the applicable law on awarded or discharged profits. Now, we pointed out the other three factual mistakes by the Court, and I recognize that factual findings are reviewed under the clearly erroneous standard. But, as I point out in the reply brief, that standard is applied in different contexts in different ways. When you don't have a credibility determination, deference ordinarily afforded by the district court's determination is not as high. You also, as a district court judge, as you know, can't simply ignore uncontradicted evidence without good reason to do so. And the question is whether reasonable minds could differ on whether the district court thought that there was a good reason for ignoring the uncontradicted evidence. In many respects, the uncontradicted evidence was simply ignored. It wasn't explained away. It was simply ignored. The interest expense, for example, on the $20,000 that was not deducted from the profit award had a number of undisputed facts. We had the original note, the demented note, proof of payment, the cashier's check, the deposit receipt. We had declarations from Mr. Papanicolau on how this is money that had been owing for years that he had paid. And what the Court did was draw unreasonable inferences from that undisputed evidence. The Court said, well, the notes didn't say that he had executed those notes on behalf of Roxie's. He didn't need to. It was his obligation. Roxie's is just his fictitious business name. Similarly, the notes actually did have corroborating evidence because they used Roxie's business address. So what the judge did was draw unprincipled, unreasonable inferences from the uncontradicted evidence. District court says there's no explanation why the $20,000 was suddenly due. Well, there didn't need to be an explanation because it wasn't suddenly due. It had always been due, and Mr. Papanicolau had the means to pay it at the time and he did. What was important is the auditor never made any attempt to verify the debt or the amount of the interest in principle owing. Finally, the district court tried to explain it away by arguing there was a 4-month gap between the issuance of the check and the deposit of it, which was questionable. But the uncontradicted evidence was this was in payment of a debt that was owed to Gloria Parrish. And we have similar circumstances on the $21,000 adjustment for supplies and expenses. The background was that the auditor had changed the adjustment from 5 percent, his original report, to 20 percent in his new report. And he did it based upon a sampling of 181 expenses from approximately 4,000 expenses listed on 86 pages. In the district court's ruling, there are four minor criticisms levied, which we completely answered. There's a criticism that there's scraps of paper, but those scraps of paper were contemporaneous business records provided by people who made the purchases at the time they were made. There's a criticism for the accounting being confusing, and we point out exactly the items that the judge pointed out as backing up the expenses that were listed. The problem is the auditor never came to us to say, could you help us match these up? He thought he could do it on his own. He simply made a mistake, and the district court adopted it. Breyer. I wondered a little bit about – I understand it's your position that the auditor should have done this and the auditor should have done that. You might be right. The question is, as the advocate for one's side, do you have any responsibility to go to the auditor and say, now, when you go through these things, I want to make some arguments to you and have you consider these things before you arrive at some conclusion? There is responsibility there, and I shouldered that responsibility. When we turned over the documents to the auditor to begin with, I spoke to him about that. I then wrote him about that. I've quoted it in my brief, saying, you made the mistake the first time around. Please don't do it again. If you have questions or need for documents, can you please contact us as you do your job over these many months, because we're happy to meet with you, give you documents. And his attitude is, I can do it on my own. Well, the problem with accounting, when you're doing an audit, is you do have a responsibility to talk to the people involved as the auditor to make sure you're doing it right. And he just didn't do that, and that's the practical reason that we're here, as I started out explaining. I also pointed out in the brief the issues with respect to the credit card expenses. There was simply an error made by the Court, as well as myself, in not seeing something that was in the report. It varied at the very end of the updated report, where the auditor, without any reason, changed the deduction for credit card expenses from about $18,000 to $38,000, without any explanation at all. And so when we filed our motion for reconsideration, we provided the explanation for all the credit card expenses and showed how about 27,000 of it was for business expenses, and about 11,000 was for personal. And the Court simply ignored that evidence, as well. The bottom line is there was a great deal of questioning about the extent of your objection. I mean, I thought the Court acknowledged the evidence you put in and then just said only X amount of credit card fees were actually proven. So it's a question of having looked at it, but disagreeing with the full extent of your objection. So I'm not quite sure how we would overrule that. I would like to reserve a little time, but let me just respond to that. The district court, in making its initial ruling, said, I'm adopting the auditor's figure, but the district court even had the auditor's figure wrong. And then we pointed out in the motion for reconsideration how that was a mistake, and when he ends up issuing his opinion, the district court didn't even address that. And so we had uncontradicted evidence of the other. So what do you think the amount should be? Pardon me? What do you think the amount should be, the proper figure, even though you don't have it? No, for credit cards. For credit cards. Oh, on credit cards. Well, the amount that should have been deducted should have been $27,586.41. That's the amount that was proper business, excuse me. And what the auditor deducted was $38,605. And I've summarized the numbers at the end of the opening brief to give you an idea. And at the end, my client really lost money during this period. He didn't have profit to disgorge. And if you take into account the taxes and these other items, you would reach the same conclusion. Unfortunately, with the way this came about, we didn't have a chance to talk to the judge to explain how he was reaching incorrect assumptions, and when we tried to do it on paper, there were criticisms in the ultimate order that we didn't have a chance to address. Thank you. Thank you. Good afternoon. May it please the court. I'm Stephen Young of Freeman, Freeman & Smiley, representing the Appellee, Jerry's Famous Deli, Inc. This has been a very, very long journey, I think. When this case began, the first time Sue was brought in district court on the infringing issues was 1992. I think I still had gray, I'm sorry, brown hair in those days. In any event, this is an interesting appeal in that it really, while it gives lip service to the appropriate standard of review by this court, which is abuse of process or clear air, then proceeds to ask this court to delve deeply into the district court's findings of fact and analysis of fact to determine what the amount of discouraged profits should be, all for the sole purpose of trying to establish that there was absolutely no profit and, therefore, no punishment that the appellant suffers by way of his clear, uncontradicted, and unmitigated multiple violations of the stipulated permanent injunction for a period of time, approximately three years. So that's what this appeal is really about. It's an attempt to re-argue things that have led to a monetary sanction in the form of discouraged profits being imposed upon the appellant for his conduct. The effort has been to continuously throw the burden back on the auditor and throw criticism back to the district court. The district court didn't do this. The auditor failed to do that. What the record shows, I respectfully submit, is that the appellant had an enormous, virtually years of opportunity to present to the auditor, to present to the district court, a piece of paper that it wanted the auditor and the district court to consider, determining whether there were any, and if so, the amount of net profits to be discouraged. And it almost became like watching a tennis match. The auditor would make a report. The district court would engage in certain findings. If the auditor's report relied upon the absence of certain information, lo and behold, all of a sudden, the documents miraculously appeared, the information was all of a sudden provided, notwithstanding years of prior opportunity for that to be put into the record. Well, I mean, his point is that until he saw what the auditors were doing, until he got the report of the auditors' doing, he had no idea how mistaken the auditors were. I mean, I don't think you walk into an audit assuming that the auditor is going to make mistakes. You assume he's going to get it correct, and then he writes to you and says, by the way, if you take a different view, let me address it. I mean, this auditor did all sorts of things that were unusual. I mean, look, when it came to you the first — didn't you have a $300,000? In excess. Yeah. Now it's down to $100,000. Well, that $200,000 just didn't disappear. I mean, the auditor — somebody concluded that that was $200,000. He walked with it. He properly attributed it to the other side, right? That is correct, but that — This is an auditor that makes big mistakes. And the question is, when you get these two-thirds off, so the question is whether or not he did follow a procedure with the $100,000 that's owed or whatever that is, which is the appropriate amount. And whether there was some sort of process that he was engaged in which gave the other side the opportunity to come forward and say that this was a mistake and that was a mistake. And what I'm actually interested in, your response on the last point, though, it's a small point. It's only $20,000 or so, small in the context of this case, which was he said that the auditor at the last moment changed the business expenses. And that — and the district judge just simply adopted that. And it was the first time anybody had seen this figure of $37,000. I guess that's the figure, $37,000. Can you — I'm sure there's a response, so I want to look at what is your response to that. Sure. Your Honor, I think the record is very clear that in every instance where the auditor issued a report or supplemental report or answered the series of questions that the district court put to the auditor, there was an opportunity given by the district court and utilized by the appellant to respond. Even when the district court essentially said, I don't want to hear anything in response to the October 04 — I'm sorry, October 05 supplemental report by the district court, there was an opportunity given by the district court to respond. And it's very clear in looking at the court's ruling of November 29th, which relates to the judgment of the same date, that the court considered all of those things. So it isn't like there wasn't an opportunity for these things to be considered. It may not have been exactly the opportunity that appellant's counsel would have given the court, but there was an opportunity to address the issue. It was addressed. And this court's responsibility is — and it's a weighty one — is to see whether the district court committed clear error or an abuse of discretion. I think respectfully that this court's burdens are great enough without trying to — having to reach in and essentially supplant the district court in trying to review the evidence and determine whether or not a particular accounting error of some sort was made by the auditor and or the district court. I mean, if it's possible. One of the difficulties with the district court, to be honest, is he says, oh, well, here's the amount of the auditor. Roxie's objects to that, but despite the objection, I sustain the auditor, which kind of leaves us nowhere in terms of figuring out what happened. So the one place where that was not true was in the income tax, where, as I understood what the district court said as well, no bother that the income tax wasn't deducted, because when the time comes to file a return, once these profits are paid out, then they will be able — then you'll have the full deduction of the amount, and basically that will be a benefit. But is that — is this a legal conclusion or is this a factual conclusion? I believe it's a legal conclusion, Your Honor. I think the interpretation of the tax laws and when one has an opportunity to deduct is definitely a legal conclusion. Your Honor, I'm not going to — But you would review DeNovo, then, correct? That would be correct, Your Honor. But there is, going back to the tax point, there is a response. Mr. Maran's counsel for the appellant discussed with his court, at least his view, that the decision in Wolf, as it remains unaffected by any further review, in the underlying Supreme Court case, the Larson case, was somehow unprincipled. And that is not at all the circumstance. There is a principle there. There was a principle there. And that is that if you allow someone who has been determined to be a deliberate and willful infringer, deliberate and willful violator of an injunction, to take the deduction, then, in effect, they're benefiting, if you will, or not being punished, if you will, to the full extent of their deliberately infringing activities. And that is the principle. And Mr. McCarthy, again, a very, very fine advocate, spoke of mitigating circumstances. There were — there was no evidence of mitigating circumstances put before the district court whatsoever. And, in fact, as Justice Bybee noted, it was very clear that this was not conduct that was at the edge of the lines, maybe crossing it a little bit here and there. It was way and clearly over the line, a bright line to ask no questions. Breyer. So what is the principle involved? Again, I sort of lost it. If a person has — if a person is a willful infringer and has made $100,000 on an operation and he's supposed to disgorge the property, and in the first instance you'd say, well, that's $100,000, you made $100,000, you ought to disgorge $100,000. And then it turns out that actually he paid $20,000 of that to the IRS. So when he went home at the end of the day, he had $80,000. So you say, no, he should pay $100,000 because of the principle involved. What is the principle involved that he should pay more money than he actually got? It's not just punitive. The principle involved, I believe, Your Honor, is that the $100,000 is what was realized, if you will, by the infringing activities, not the 80. $100,000 of income came in. So your argument is that essentially, in the definition of profits, it's a gross figure, and it's whatever comes in, irrespective of whatever expenses he may have in connection with it, or at least taxes that he has. That's the principle. That is the principle. In the case of a — of a — someone found to be a willful or deliberate infringer, it is a determination of net profits before taxes. Otherwise, you're allowing a benefit for wrongful conduct to be realized. There is — No, but that I don't — that's where you lose me. I understand the first part of what you said. Okay. I'm sorry. What you lose me is — is that you allow somebody, and I guess you're saying is enriched by — the willful infringer is enriched by being able to deduct the amount of money he paid to the Federal Government. And that's where you lose me, because I don't understand if I have to pay some money. I pay taxes, at least I'm supposed to, and I have to believe that I'm not enriched by my paying the taxes. I believe that the government is enriched by my paying the taxes. So I don't — I'm having a little hard time, I'm having some difficulty understanding what you mean by the principle involved. Let me try and respond. Justice Breyer, I believe that — Don't mix him up with that other guy. Okay. I'm sorry. In any — in any event. I think the principle is this, is that using the $100,000 example you were using, if $20,000 of income taxes had to be paid, having the $100,000 of ill-gotten gains makes it easier to come up with that 20. In other words, it provides a source to pay taxes. That it — that wouldn't be there for the infringing conduct. So I think — I hope that's the reason. But he's not being taxed on infringement. He's being taxed on the profits. So you have to start with $100,000 if you don't get the $20,000 of taxes. If we don't start with the infringement and say that the IRS is going to tax the infringement and your bill is $20,000, then happily, you've got $100,000 to pay that with. If we find that the profits were only $50,000, he doesn't still owe $20,000 in taxes because he's an infringer. Correct. Of course. I completely agree with that. I'm — so I'm still — I'm still just — I'm still just a little puzzled. Let me take a different way of getting at this. Sure. The Judge Breyer asked earlier — I don't know if this is why he asked it, but he asked it — let me ask a similar question. Sure. If your client collects this $100,000, is he going to have to pay taxes on the profits? Sure. So he will have to pay taxes on that because these would have been profits that he would have gone had there not been an infringement. I'm sorry. I may have misunderstood. My client is Jerry's Famous Deli. The money that Jerry's Famous Deli receives on the disgorgement is taxable income to it. There's no question. Okay. So if your client collects $100,000 from Roxy's — Mm-hmm. — and Mr. Papanicolo, then they are going to have to pay taxes on that $100,000. Of course. Now, presumably, this is now double taxation that's been collected by the IRS. I don't know that. And the fact of the matter is we don't know that, and that's not really established. I understand that. That's probably not — that's not your — that's not your problem. But it may — it may get back to the question as to whether — as to whether Jerry's, as the district court thought, might be able to account in the future for the taxes that it's paid. No. I think, actually — At some point, it looks like the IRS may be collecting taxes from two different sources. I think the district court was looking at Roxy's. Yes. So, in other words, if you — if Roxy's has a $100,000 profit after expenses other than taxes — and let's say they pay $20,000 just for ease. So they pay $20,000 out. Your client gets the $100,000, puts it in the bank, has to pay taxes. We don't know the rate of taxes, because it will depend on their tax situation in that given year. Sure. But then, unless it's a one-to-one write-off, it's not clear to me that Roxy's gets the same benefit. Because let's say the next year, they have a $100,000 profit, but they can write off $100,000 because they paid that to you, or in the tax year in which they made the payment. Then they have zero tax liability, supposedly, according to the auditor. Is that right? I think, if I follow your example, that might well be true. But I'm not sure — I guess the question is this, is that without knowing what their tax situation is for the year in which they pay out the money, how is it possible for the auditor to say, well, they're going to get that money back, or it's going to be a wash to them in the tax situation? You know, I don't think an auditor could say that they would definitely get the money back. But I think what the auditor could say and did say is that it is available as a deduction if it's needed in the given year when the money is paid. I don't think it would have been. But then the district court kind of says, more or less, well, because of that, because of that's what the auditor said, therefore, because the defendant will experience a tax benefit in the year he pays out the judgment, because he'll be able to deduct the full amount, therefore, the objection is overruled. So it seems to me that's the basis for the district court's decision, is it not? Well, Your Honor, I have to say that I'm not sure exactly what the basis was. I think the real question is, was there a basis that is supportable, whether it was, you know, elucidated in the district court's decision or not, was it the proper decision on review by this Court and using the standard of review that's applicable? And I believe that it was. And I believe that it was very simply because of the Wolf case and because of the underlying Larson case. And I think that really ends the issue. I think almost the auditor's remarks were perhaps unnecessary but not incorrect in terms of availability for potential deduction. And I don't think it's an issue that is squarely and properly before this Court, although I understand that the, you know, appellant would clearly like it to be. Mr. Young, is this whole little tax conundrum, is that the reason why the Court in Larson and then in Wolf said, look, if you're a Wilco infringer, the tax problem is yours and we're not going to account for it? Maybe you get the benefit of it and maybe you don't. And if you don't, well, that's just your tough luck. That's how I read those cases, Your Honor. I think that's exactly the answer. I think when you are in a position of having gained profits, you know, taxable or not aside, any tax issues that result from that become the problem of that, of the person or the entity that violates the law with respect to how they got those profits in the first place. And so I think it really is an issue that's very interesting academically and I'm sure we could probably debate about it informally for hours about what should be, shouldn't be, and so forth. But I just don't think that's an issue that needs to be determined here because there is a legal basis for what the district court did, notwithstanding perhaps a better articulated, the desirability of a better articulated decision on that point. Insofar as the rest of these issues are, the credit cards, this note, the $20,000 of so-called business expenses, those are all, if you look at the briefing on this, particularly the reply brief, it is nothing but an intense set of factual arguments as to why the district court made factual errors in its determination. And one of the key things that the appellant keeps pointing out is there was uncontroverted evidence. What was the uncontroverted evidence? The uncontroverted evidence was the self-serving declarations of Mr. And it's been a long time since I'm out of law school and maybe things have changed, but I think not, in that just because some purported evidence may be uncontroverted does not mean that it is to be credited, that it is credible. The district court has lived with this case, with Mr. Papadopoulos' conduct, with his declarations, with declarations by folks that he has had trying to support him in his efforts to resist any liability, second, to resist being found in contempt, third, being found to have profits to be disgorged, for a very, very long time, dating back to the first lawsuit in 1992. It seems to me that the district court, and I say this extremely respectfully to this court, is uniquely positioned to make a decision on whether just because something is, quote, uncontradicted, unquote, it is worthy of being credited and to what extent. So I don't think, again, under the applicable standards of review before this court, that the issue of whether the determination of the district court in those factual matters, other than the taxes, was correct or not, is something that should be reviewed by this court in any kind of detail other than was there a clear abuse of process or was there a clear error. And I would submit, Your Honor, as time is running out to each of you, that this has had all the process that is due. Mr. Papadopoulos has had more bites at the apple than he probably should have. Justice has been done to this extent, but this case needs to come to a final conclusion. It's almost 15 years since it started. Roberts. Although we were not here at the beginning. Thank you. Thank you very much. Most of your time has expired, but I would give you a minute if you would like a specific rebuttal. Appreciate it. Just a few quick points. We spent a lot of time on the tax issue. I don't think there's much to add, except just to keep in mind the district court didn't address it in a legal fashion on applying the Supreme Court's decision. Again, the district court chose to excuse the mistake, but it made assumptions that there would be future income to deduct against, which was speculative, and that there would be a dollar-for-dollar benefit, which the uncontroverted declaration of Mr. Money said was not the case. What about the point about the business expenses? You really did have an opportunity to address it, and I had understood that you raised it. What happened? Go ahead. We had petty cash expenses and credit card expenses, and we did address it up front back in August of 2002. Then when it was sent back, Goddard was given a chance to now issue a new report. It came up with new criticisms, which we addressed again. In the end, this is a tedious issue for you to review, a tedious issue for me to draft in terms of briefs and to talk about, but you have to get down to the detail to see how either the district court ignored the uncontradicted evidence, or when it chose to address it, it didn't have a good reason for ignoring it, or it didn't have a good reason for explaining it away. And that's ultimately why, under the clearly erroneous standard, the factual findings should not be affirmed by this Court, because there wasn't good reasons for ignoring the uncontradicted evidence. Thank you. Thank you very much. I mean, this is tedious, and I know it's tedious for the district court and tedious for all of you. The fact that it is tedious doesn't mean that we don't actually take the time to go through the record, which is quite voluminous, and try to figure out the calculations. So we will continue to do that. Thank you both for your argument this afternoon. The case just argued is submitted. Is Delicatessen still in business? Still in business. Maybe if you could end the litigation, we can all go eat at both. We're adjourned.
judges: McKeown, Bybee, Breyer